UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA MCCARTHY, | : | |
| DEVIN MCCARTHY, and | : | |
| OLUWATOMISIN OLASIMBO, | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| - against - | : | |
| | : | JURY TRIAL DEMANDED |
| RAUL JAUREGUI and | : | |
| DANIEL BOYE, | : | |
| | : | No. |
| Defendants. | : | |

## COMPLAINT

Plaintiffs Debra McCarthy, Devin McCarthy and Oluwatomisin

Olasimbo, by their attorneys, Barry H. Dyller, Esq. and Tara G. Giarratano,

Esq. of Dyller & Solomon, for their Complaint allege as follows:

## JURISDICTION AND VENUE

1.  This action arises out of violations of Pennsylvania common law.  It is

anticipated that at the appropriate time plaintiffs will file a supplemental

Complaint pursuant to Pennsylvania statutory law after certain events occur

constituting the final element of an additional claim.

2.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §

1332, because there is complete diversity of citizenship between the

plaintiffs and the defendants, and because the amount in controversy is in excess of $75,000, exclusive of interest and costs.

3.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

THE PARTIES

4.  Plaintiff Devin McCarthy is a New York State domiciliary.  At all times relevant to the claims herein, Devin McCarthy was a student at King's College, in Wilkes-Barre, Pennsylvania.

5.  Plaintiff Debra McCarthy is a New York State domiciliary.  Debra McCarthy is the mother of Devin McCarthy.[1]

6.  Plaintiff Oluwatomisin Olasimbo is a Maryland domiciliary.  Ms. Olasimbo was at all relevant times a student at King's College and was a friend of Devin McCarthy.

7.  Defendant Raul Jauregui is a Pennsylvania attorney and, upon information and belief, a Pennsylvania domiciliary.

8.  Defendant Daniel Boye is a Pennsylvania domiciliary.  Mr. Boye was

---

[1] Because two plaintiffs' surnames are "McCarthy," **Devin** McCarthy is referred to herein as "Ms. McCarthy." **Debra** McCarthy is referred to herein as "Mrs. McCarthy."

a student at King's College, until he was expelled, as explained further below.

## FACTS

### Background of Devin McCarthy and Daniel Boye

9. Ms. McCarthy, Ms. Olasimbo, and Boye began attending King's College as freshmen in August of 2019.

10. During the fall 2019 semester, Ms. McCarthy and Boye had a sexual relationship.

11. All sexual encounters between Ms. McCarthy and Boye during the fall 2019 semester were consensual.

12. Before the beginning of the spring 2020 semester, Ms. McCarthy communicated to Boye that she no longer wished to have a sexual relationship with him.

13. During the spring 2020 semester, Ms. McCarthy and Boye had no sexual encounters.

### The Rape

14. August 29, 2020 was the Saturday before the fall 2020 semester began at King's College.

15. On the night of August 29, 2020, Ms. McCarthy attended a party held on the second floor of O'Hara Hall on the King's College campus.

3

16. At the party Ms. McCarthy consumed a significant amount of alcohol.

17. Ms. McCarthy left the party at approximately 2:30 a.m.

18. Ms. McCarthy has no memory of leaving the party at this time.

19. At approximately 2:47 a.m., Ms. McCarthy returned to the party.

20. At this time, Ms. McCarthy drank more alcohol with non-party student #1.

21. At approximately 3:52 a.m., Ms. McCarthy again left the party, this time accompanied by non-party student #1 and non-party student #2.

22. Ms. McCarthy has no memory of leaving the party at this time.

23. Ms. McCarthy, non-party student #1, and non-party student #2 then entered the third floor O'Hara Hall apartment ("Room 310") belonging to non-party student #1, Boye, and non-party student #3.

24. At approximately 4:13 A.M., Boye, non-party student #3, and non-party student #4 entered Room 310.

25. Ms. McCarthy and non-party student #2[2] were on the couch in states of undress when Boye, non-party student #3, and non-party student #4 entered.

---

[2] Non-party student #2 did not participate as a witness in the subsequent King's College investigation into Ms. McCarthy's Title IX Complaint against Boye.

26. Ms. McCarthy has no memory of being on the couch with non-party student #2 while undressed.

27. According to non-party student #4,[3] Ms. McCarthy was slurring her words, was very hard to understand, and had difficulty dressing herself.

28. Non-party student #4 commented on Ms. McCarthy's intoxicated state to non-party student #3, who told her that Boye wished to "get with" (*i.e.*, have sex with) Ms. McCarthy that night.

29. At approximately 4:36 a.m., Ms. McCarthy and non-party student #2 left Room 310.

30. For the next forty minutes, Ms. McCarthy and non-party student #2 stumbled through the halls of O'Hara Hall, often walking into walls and struggling to maintain their balance. During this time, non-party student #1 texted non-party student #2 and told him to bring Ms. McCarthy back to Room 310. Nonparty student #1's directive came after he and Boye discussed the possibility of the two of them engaging in a "threesome"—both of then having sex with—an intoxicated Ms. McCarthy.[4]

---

[3] Non-party student #4 testified at the Title IX hearing held at King's College pursuant to Ms. McCarthy's Title IX Complaint alleging that Boye sexually assaulted her.

[4] Non-party student #1 made these admissions during the college's investigation into Ms. McCarthy's claims and during the subsequent Title IX

31. Security camera footage shows Boye peeking out his door and looking up and down the hallway seven times between 4:55 a.m. and 5:15 a.m. At 5:15 a.m., Boye, peeking out his door for the seventh time, sees McCarthy and non-party student #2 and waves them into his apartment.

32. At approximately 5:16 a.m., Ms. McCarthy and non-party student #2 re-entered Room 310.

33. Ms. McCarthy has no memory of reentering Room 310 at that time.

34. At or shortly after 8:00 a.m., Ms. McCarthy woke up in Boye's bed. Ms. McCarthy felt pain in her vaginal and anal areas. Ms. McCarthy's chest and clavicles also hurt.

35. Ms. McCarthy has no memory of having sex with Boye but remembers Boye throwing her a red T-shirt to wear after she woke up.

36. At approximately 8:40 a.m., Boye walked Ms. McCarthy to her dorm room in Esseff Hall.

37. Ms. McCarthy has no memory of returning to Esseff Hall escorted by Boye.

_____

hearing.

38. Ms. Olasimbo, who lived in the dorm room next to Ms. McCarthy, was awake when Ms. McCarthy returned. Ms. Olasimbo[5] observed that Ms. McCarthy appeared still intoxicated and disoriented. Ms. McCarthy told Ms. Olasimbo that she believed Boye may have had sex with her.

39. Ms. Olasimbo stayed with Ms. McCarthy throughout the day and into the evening of August 30, 2020, during which time Ms. McCarthy was in and out of sleep. When awake, Ms. McCarthy repeatedly vomited. Ms. McCarthy was unable to keep anything down, including water, without vomiting.

40. Ms. Olasimbo, worried because Ms. McCarthy had vomited nonstop throughout the day, called her older sister, a physician's assistant, for advice. Ms. Olasimbo's sister advised that Ms. McCarthy should be taken to the emergency room to prevent or treat dehydration.

41. At the hospital, while being treated with IV fluids, Ms. McCarthy confided in a nurse about the pain in her vaginal, anal, chest, and clavicle areas she had been feeling all day. Ms. McCarthy told the nurse that she

---

[5] Ms. Olasimbo testified at the Title IX hearing held at King's College pursuant to Ms. McCarthy's Title IX Complaint alleging that Boye sexually assaulted her.

had no memory of having sex but was sure that Boye had sex with her based on the pain she was feeling.

42. Ms. McCarthy then consented to a rape kit, which recovered male DNA from both her vaginal and anal areas.[6]

43. After she was discharged from the hospital, Ms. McCarthy met with a representative from the Victim's Resource Center, obtained a Protection from Abuse order against Boye, reported the rape to the Wilkes-Barre Police Department, and filed a Title IX Complaint at King's College alleging Boye raped her.

King's College's Investigation and Boye's Admissions

44. King's College appointed employee Stephen Kopenis to serve as the investigator for Ms. McCarthy's Title IX complaint.

45. During the course of his investigation, Mr. Kopenis interviewed Boye.

---

[6] Both DNA samples matched, meaning that the same man left DNA in Ms. McCarthy's vagina and anus. The DNA samples were not a match for non-party student #2, who voluntarily provided a DNA sample to the Wilkes-Barre Police Department. Boye refused to provide a DNA sample to the Wilkes-Barre Police upon their request.

46. Boye admitted to discussing with non-party student #1 during the early morning hours of August 30, 2020, the possibility of having a "threesome" with an intoxicated Ms. McCarthy:

Boye:      'I did say "Oh yeah, [non-party student #1], I could probably get her to agree to a threesome with you." I did say that.'

Kopenis:   "With you and her?"

Boye:      "With me, her, and [non-party student #1]."

47. Boye admitted that he and non-party student #1 agreed to text non-party student #2 to have him bring Ms. McCarthy back to their apartment so that Boye and non-party student #1 could have sex with Ms. McCarthy:

Boye:      "We kind of came to the agreement that we didn't really want [non-party student #2] here. We kind of just wanted Devin."

48. Boye described to Mr. Kopenis in detail the sexual activity he engaged in with an intoxicated Ms. McCarthy, who has no memory of their sexual encounter.

49. Boye admitted to having vaginal intercourse with Ms. McCarthy.

50. Boye admitted to sitting on Ms. McCarthy's chest with his penis in her mouth and thrusting into her mouth until she threw up.

9

51. Boye admitted to having vaginal intercourse with Ms. McCarthy for a second time.

52. Boye admitted to having Ms. McCarthy perform oral sex on him for a second time.

53. Boye admitted to having vaginal intercourse with Ms. McCarthy for a third time.

54. Boye admitted that when he first encountered Ms. McCarthy during the early morning hours of August 30, 2020, that she was drunk and slurring her words.

55. Mr. Kopenis also interviewed non-party student #1.

56. Non-party student #1 described Ms. McCarthy as "pretty drunk" and "super drunk."

57. When asked during the Title IX hearing to elaborate on Ms. McCarthy's level of intoxication, Mr. Kopenis stated "there's information that I retained during the investigation that there is a possibility of black out."

58. By contrast, the evidence collected by Mr. Kopenis and presented at the Title IX hearing established that Boye was sober.

59. Non-party student #1 described Boye as the "most sober" person in Room 310 during the early morning hours of August 30, 2020.[7]

---

[7] Non-party student #1 testified in support of Boye at the Title IX hearing

Debra McCarthy's Email to King's College's Title IX Coordinator

60. Robert McGonigle is the Title IX Coordinator at King's College.

61. Part of Mr. McGonigle's job as Title IX Coordinator is to receive reports of sexual assaults that happen on campus.

62. On September 16, 2020, Debra McCarthy emailed Robert McGonigle.

63. The subject line of Mrs. McCarthy's email was "Confidential."

64. In her email, Mrs. McCarthy asked Mr. McGonigle to investigate her daughter's sexual assault allegation.

65. Mrs. McCarthy's email acknowledged that she was emailing Mr. McGonigle because he was King's College's "confidential title 9 person."

Daniel Boye's Counterclaim Alleging that Devin McCarthy Raped Him

66. Sometime after Boye made the above-detailed admissions to Mr. Kopenis, Boye hired Attorney Raul Jauregui to represent him at the Title IX hearing for Ms. McCarthy's complaint against him.

_____

held at King's College pursuant to Ms. McCarthy's Title IX Complaint alleging that Boye assaulted her.

Non-party student #1 also admitted to Mr. Kopenis that he discussed with Non-party student #2 in a different apartment, Room 210, the possibility of a having a threesome with Ms. McCarthy.

67. Upon information and belief, Jauregui soon thereafter advised Boye to file a baseless and retaliatory Title IX counterclaim against Ms. McCarthy.

68. Upon information and belief, Jauregui's intent in advising Boye to file a baseless and retaliatory Title IX counterclaim against Ms. McCarthy was to delay the hearing for Ms. McCarthy's complaint, to retaliate against Ms. McCarthy for filing her complaint, and to intimidate Ms. McCarthy into dropping her complaint.[8]

69. Boye's baseless and retaliatory counterclaim alleged, without any supporting evidence, that Ms. McCarthy engaged in sexual misconduct, dating violence, and/or sexual harassment in relation to Boye during their consensual relationship during the fall 2019 semester and during the early morning hours of August 30, 2020.

70. King's College again appointed employee Stephen Kopenis to serve as the investigator for Boye's baseless and retaliatory counterclaim.

---

[8] Boye submitted to an interview with Mr. Kopenis as part of Mr. Kopenis's investigation into Ms. McCarthy's complaint before he hired Jauregui to represent him. Not surprisingly, in his interview for Ms. McCarthy's complaint, Boye did not state to Mr. Kopenis any of the allegations Boye later made in his counterclaim. Boye made such allegations only after, upon information and belief, Jauregui instructed him to manufacture them for the improper purposes discussed above.

71. Mr. Kopenis interviewed Boye as part of the investigation into Boye's counterclaim.

72. Boye admitted to Mr. Kopenis that there was no evidentiary basis for the counterclaim. When asked if Devin McCarthy had ever threatened him during a sexual encounter, Boye responded, ""Nothing threatening. She wasn't threatening. It was more just her boldness and her being very forward."

73. Boye admitted that every time he told Ms. McCarthy that he did not like something she did during sex, she stopped doing it.

74. Boye admitted that in several of the sexual encounters—during which his counterclaim alleged Ms. McCarthy engaged in sexual misconduct, dating violence, and/or sexual harassment—he asked Ms. McCarthy to perform oral sex on him.

75. Boye admitted that during the early morning hours of August 30, 2020—after the multiple fall 2019 semester sexual encounters during which Boye's counterclaim alleged Ms. McCarthy engaged in sexual misconduct, dating violence, and/or sexual harassment—he discussed with non-party student #1 the possibility of their having a threesome with Ms. McCarthy and that non-party student #1 texted non-party student #2 to bring Ms. McCarthy back to Room 310 in pursuit of that goal.

13

76. Boye's and Jauregui's efforts to intimidate Ms. McCarthy failed, and she did not drop her Title IX Complaint.

Daniel Boye's Sham Complaint Against Ms. Olasimbo

77. Boye and Jauregui then effected a second attempt to intimidate Ms. McCarthy into dropping her Title IX Complaint by filing a baseless and retaliatory Title IX Complaint against Ms. Olasimbo.

78. In his complaint against her, Boye alleged that Ms. Olasimbo "intimidated witnesses who would exonerate him" and "created a sexually hostile environment for Boye" by "placing him in false light."

79. The "basis" for Boye's allegations is a text message exchange between Ms. Olasimbo and non-party student #5.

80. After Ms. McCarthy filed her Title IX Complaint against Boye, non-party student #5 engaged in a retaliatory smear campaign against Ms. McCarthy, including spreading sensitive details about Ms. McCarthy's case throughout the King's College campus community, causing Ms. McCarthy embarrassment and emotional distress.

81. Ms. Olasimbo texted non-party student #5 because Ms. Olasimbo wanted non-party student #5's campus-wide harassment of Ms. McCarthy to stop. In the text message exchange, Ms. Olasimbo expressed her disappointment with non-party student #5's conduct. Specifically, Ms.

14

Olasimbo criticized non-party student #5's painting of Ms. McCarthy as promiscuous.

82. Ms. Olasimbo did not threaten non-party student #5 in any way.

83. Mr. Kopenis interviewed non-party student #5 as part of his investigation into Boye's complaint against Ms. Olasimbo. Non-party student #5's interview testimony reveals that she did not think Ms. Olasimbo, through the text message, attempted to intimidate her and prevent her from talking to Mr. Kopenis:

> Mr. Kopenis: "…did you feel that she [Ms. Olasimbo] was trying to compel you not to provide information through this text message?"

> Non-party student #5: "No, not necessarily."

84. Non-party student #5 instead stated that she felt "threatened" only regarding her reputation, explaining that she feared being placed in a "bad light."

Daniel Boye's Defamation Lawsuit Against Debra McCarthy

85. Boye and Jauregui then effected a third attempt to intimidate Ms. McCarthy into dropping her Title IX Complaint by filing a baseless and retaliatory lawsuit against her mother, Debra McCarthy, in the Luzerne County Court of Common Pleas (the "First Common Pleas Lawsuit") on January 27, 2021.

86. Boye is the plaintiff in that First Common Pleas Lawsuit, although he names himself "John Doe."  Jauregui is the lawyer who filed the First Common Pleas Lawsuit on Boye's behalf.

87. The First Common Pleas Lawsuit purports to allege state law claims of defamation and related claims.

88. The "basis" for the First Common Pleas Lawsuit was the September 16, 2020 email Debra McCarthy sent to King's College Title IX Coordinator Robert McGonigle asking him, in his capacity as the college's "confidential title 9 person" to investigate Ms. McCarthy's sexual assault allegation against Boye.

89. Upon information and belief, Jauregui advised Boye to file the baseless First Common Pleas Lawsuit against Debra McCarthy.

90. Upon information and belief, Jauregui's intent in advising Boye to file the baseless First Common Pleas Lawsuit against Mrs. McCarthy was to retaliate against Ms. McCarthy for filing her complaint, and to intimidate Ms. McCarthy into dropping her complaint.

91. For the third time, Boye's and Jauregui's efforts to intimidate Ms. McCarthy failed, and she did not drop her Title IX Complaint.

Results of the Various Claims

92. As of the filing of this Complaint, the results of Boye's and Jauregui's various proceedings against the plaintiffs are as follows:

A. The Title IX claim against Ms. Olasimbo within King's College was dismissed before the hearing for lack of sufficient evidence. No appeal is pending.

B. King's College found Ms. McCarthy not responsible for the alleged conduct in Boye's Title IX counterclaim against Ms. McCarthy. Boye appealed. As the appeals process was nearing a close, Jauregui filed, on Boye's behalf, a second frivolous lawsuit in the Court of Common Pleas (the "Second Common Pleas Lawsuit"), against King's College, in order to forestall completion of the appeal process.

C. Preliminary Objections in the First Common Pleas Lawsuit have been briefed and argued and are awaiting decision.

King's College found Boye responsible for forcible rape of Ms. McCarthy. This finding was affirmed by King's College Appeal Officer Holly Kulp. King's College expelled Boye.

Damages

93. Each of the plaintiffs has suffered damages in excess of $75,000 as a result of defendants' actions.

## COUNT ONE
(Battery – Devin McCarthy vs. Daniel Boye)

94. Plaintiff Devin McCarthy repeats and realleges each and every allegation contained above as if fully set forth herein.

95. Boye committed the acts described above with the intent to cause a harmful or offensive contact with Ms. McCarthy's body and/or with the intent to put Ms. McCarthy in reasonable and immediate apprehension of a harmful or offensive contact with her body.

96. Boye's actions directly resulted in harmful and/or offensive contact with Ms. McCarthy's body.

97. As a result of Boye's actions, Ms. McCarthy suffered injuries and damages.

## COUNT TWO
(Abuse of Process – Debra McCarthy
and Devin McCarthy vs. All Defendants)

98. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

99. Defendants used legal process against Debra McCarthy, specifically the First Common Pleas Lawsuit.

100. This legal process by defendants was designed and used to attempt to intimidate Devin McCarthy into abandoning her King's College Title IX proceeding against Boye and to protect Boye from potential criminal charges.

101. Defendants Boye's and Jauregui's purpose in using such legal process was primarily to accomplish a purpose for which it was not designed.

102. The use of such legal process proximately caused damage to Debra McCarthy and Devin McCarthy.

COUNT THREE
(Abuse of Process – Devin McCarthy vs. All Defendants)

103. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

104. Defendants used legal process against Devin McCarthy, specifically the counterclaim within the King's College Title IX proceeding.

105. This legal process by defendants was designed and used to attempt to intimidate Devin McCarthy into abandoning her King's College

Title IX proceeding against Boye and to protect Boye from potential criminal charges.

106. Defendants Boye's and Jauregui's purpose in using such legal process was primarily to accomplish a purpose for which it was not designed.

107. The use of such legal process proximately caused damage to Devin McCarthy.

COUNT FOUR
(Abuse of Process – Oluwatomisin Olasimbo
and Devin McCarthy vs. All Defendants)

108. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

109. Defendants used legal process against Ms. Olasimbo.

110. The legal process against Ms. Olasimbo was the Title IX proceeding against Ms. Olasimbo within King's College.

111. This legal proceeding was designed to intimidate Devin McCarthy into abandoning her King's College Title IX proceeding, to protect Daniel Boye from potential criminal charges, and to intimidate Ms. Olasimbo and others from supporting Devin McCarthy.

112. Defendants Boye's and Jauregui's purpose in using such legal process was primarily to accomplish a purpose for which it was not designed.

113. The use of such legal process proximately caused damage to Oluwatomisin Olasimbo and to Devin McCarthy.

## COUNT FIVE
(Intentional Infliction of Emotional Distress;
Devin McCarthy vs. All Defendants)

114. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

115. Defendants, by their extreme and outrageous conduct, intentionally or recklessly caused Devin McCarthy to suffer severe emotional distress.


WHEREFORE, plaintiffs demand judgment as follows:

A.    For plaintiff Debra McCarthy, an amount to be determined at trial in excess of $75,000, including punitive damages and interest;

B.    For plaintiff Devin McCarthy, an amount to be determined at trial in excess of $75,000, including punitive damages and interest;

C.    For plaintiff Oluwatomisin Olasimbo, an amount to be

      determined at trial in excess of $75,000, including punitive

      damages and interest;

D.    For costs and disbursements incurred in this action; and

E.    Any such other relief as the Court may deem just and proper.


Respectfully submitted,

DYLLER & SOLOMON

s/ Barry H. Dyller, Esq.
Tara G. Giarratano, Esq.
Attorneys for Plaintiffs
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860


Jury Demand

Plaintiffs demand a trial by jury on all issues.