## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEBRA MCCARTHY, et al.,** | : | **Civil No. 3:21-CV-1759** |
| | : | |
| **Plaintiffs,** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **RAUL JAUREGUI, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case, which comes before us for consideration of two motions to dismiss, (Docs. 13 and 15), as well as a motion for sanctions, (Doc. 16), presents competing claims of litigation misconduct which play out against the backdrop of a highly charged, emotionally divisive issue: sexual violence on a college campus.

The well-pleaded facts set forth in the plaintiffs' amended complaint, which guide our consideration of these motions recite that the plaintiff, Devin McCarthy, is a New York resident who was a student at King's College, in Wilkes-Barre, Pennsylvania. (Doc. 4, ¶ 4). Plaintiff, Debra McCarthy is also a New York resident and is the mother of Devin McCarthy. (Id., ¶ 5). Plaintiff Oluwatomisin Olasimbo is a King's College student and resident of Maryland. (Id., ¶ 6). The defendants are Daniel Boye, a former King's College student who was expelled from that school

following a Title IX misconduct proceeding, and Raul Jauregui, an attorney who represented Boye. Both defendants allegedly reside in Pennsylvania. (Id., ¶¶ 7, 8).

According to the complaint, Devin McCarthy, Ms. Olasimbo, and Mr. Boye enrolled in King's College as freshmen in August of 2019. During their first semester at college, Ms. McCarthy and Mr. Boye engaged in a consensual sexual relationship which Ms. McCarthy drew to a close by the Spring semester of 2020.  (Id., ¶¶ 9-13).

Ms. McCarthy returned to King's College by August 29, 2020 to commence the Fall 2020 semester at the school. On August 29, 2020, Ms. McCarthy attended an on-campus party where she drank to excess, leaving her unable to recall much of what transpired during the evening and early morning hours of August 30, 2020. (Id., ¶¶ 14-22). Ultimately at approximately 4:00 a.m., Ms. McCarthy found herself in Room 310 at O'Hara Hall, on the King's College campus, a room occupied by Mr. Boye and several other students. Ms. McCarthy and an unnamed student were in Room 310 in various states of undress when Mr. Boye entered the room. (Id., ¶¶ 23-25).

While Ms. McCarthy's memory of these events was impaired due to her state of intoxication, the complaint alleges that other witnesses observed that she was clearly impaired. Ms. McCarthy left Room 310 at approximately 4:36 a.m., aided by another, unnamed student since she was struggling to maintain her balance. (Id., ¶¶ 27-30). It was during this time that it is alleged that Mr. Boye and others

2

planned to lure Ms. McCarthy back to Room 310 in order to engage in sex with her. In fact, a heavily inebriated Ms. McCarthy returned to Room 310 in the company of an unnamed student at approximately 5:16 a.m. (Id., ¶¶ 28-32).

Several hours later at approximately 8:00 a.m. Ms. McCarthy awoke to find herself in Boye's bed experiencing anal, vaginal and chest pain. Boye then escorted McCarthy back to her dormitory where Ms. Olasimbo, who resided in the dorm room next door, observed McCarthy to be disoriented and intoxicated. McCarthy also advised Olasimbo that she believed that Boye had engaged in sex acts with her earlier that evening when she was impaired and was unable to consent. (Id., ¶¶34-38).

Olasimbo remained with McCarthy throughout the day and into the evening of August 30, 2020. On the advice of a family member, Ms. Olasimbo later transported McCarthy to a hospital emergency room, where she was seen and treated. While at the hospital Ms. McCarthy explained that, while she had no memory of any sexual encounter, she believed based upon her physical discomfort that Boye had engaged in sexual relations with her while she was too intoxicated to consent. A rape kit then confirmed male DNA samples indicative of vaginal and anal penetration. (Id., ¶¶ 39-42).

Upon her release from the hospital, Ms. McCarthy filed a Title IX complaint with King's College alleging that she had been sexually assaulted by Boye.

McCarthy's mother, Debra McCarthy, also requested that a Title IX investigation be undertaken. (Id., ¶¶ 60-65).

An investigation and Title IX proceedings then ensued. In the course of this investigation, Boye was interviewed and admitted to engaging in sexual intercourse and oral sex with McCarthy at a time when he knew she was intoxicated. (Id., ¶¶ 45-54). Other witnesses confirmed that Ms. McCarthy was intoxicated at the time of this incident. In contrast, Boye was described as sober when he indulged in this conduct. (Id., ¶¶ 55-59).

As these Title IX proceedings moved forward, Boye hired Attorney Raul Jauregui to represent him. (Id., ¶ 66). Boye and Jauregui then pursued what the complaint describes as a "baseless and retaliatory Title IX counterclaim" against Devin McCarthy. (Id., ¶ 67). In this counterclaim Boye, acting on the advice of Jauregui, now alleged that he had been the victim of prolonged sexual violence at the hands of Ms. McCarthy, allegations which he had never raised during the initial Title IX investigation into his own conduct. (Id., ¶¶ 68-70). When King's College officials opened an investigation into Boye's claims, he recanted or modified many of his initial allegations, characterizing Ms. McCarthy conduct as bold rather than threatening, acknowledging that he initiated some types of sexual activity, and admitting that on August 29, 2020, he had discussed with others the possibility of

indulging in group sex with McCarthy while she was heavily intoxicated. (Id., ¶¶ 70-76).

The complaint further alleges that Boye and Jauregui also endeavored to intimidate Ms. Olasimbo, a potential witness in the Title IX proceeding, by filing a baseless and retaliatory Title IX complaint against her as well. In this Title IX complaint Boye and Jauregui allegedly asserted that Ms. Olasimbo was attempting to intimidate their witnesses through a text message exchange with a non-party student. (Id., ¶¶ 77-84).

According to the complaint, Boye and Jauregui did not limit their efforts at intimidation to the submission of Title IX claims. It is also alleged that the defendants filed a civil lawsuit in the Court of Common Pleas of Luzerne County against Ms. McCarthy's mother, Debra McCarthy, asserting a defamatory claim against Mrs. McCarthy based upon her email request to King's College staff that they undertake a Title IX investigation of her daughter's alleged sexual assault. (Id., ¶¶ 85-91).

These alleged efforts at intimidation were ultimately unavailing. Boye's Title IX claims and counterclaims against Ms. McCarthy and Ms. Olasimbo  were rejected. (Id., ¶ 92). King's College found against Boye on McCarthy's Title IX complaint, concluding that he had sexually assaulted McCarthy. Boye was then expelled from the college. (Id.) As for Boye's defamation lawsuit, the parties report

that this case remains pending in the Luzerne County Court of Common Pleas. (Doc. 42).

Cast against this factual backdrop, and relying upon the diversity jurisdiction of this court, the plaintiffs' amended complaint brings six claims: First, Devin McCarthy sues Daniel Boye for battery arising out of this alleged sexual assault. (Id. Count I). Second, Devin and Debra McCarthy sue Boye and his former counsel Jauregui for abuse of process, alleging that the defendants used the Luzerne County defamation lawsuit lodged against Debra McCarthy for an illicit purpose, namely; to dissuade Devin McCarthy from pursuing her Title IX claim against Boye. (Id., Count II). Third, Devin McCarthy brings an abuse of process claim against Boye and Jauregui premised upon what she alleges was a baseless and knowingly false Title IX counterclaim alleging that McCarthy sexually abused Boye. (Id., Count III). Fourth, Ms. Olasimbo brings a similar abuse of process claim against Boye and Jauregui based upon what she alleges was a false Title IX witness intimidation counterclaim which the defendants lodged against her. (Id., Count IV). Fifth, Devin McCarthy lodges an intentional infliction of emotional distress claim against all of the defendants based upon what she asserts was an effort by her rapist, Boye, with the assistance of counsel, Jauregui, to falsely accuse her of sexual misconduct. (Id., Count V). Finally, Devin and Debra McCarthy bring a state statutory Dragonetti Act claim against Boye and Jauregui, alleging that the Luzerne County defamation

lawsuit was brought vexatiously against Mrs. McCarthy for an improper purpose. (Id., Count VI). Based upon these averments of litigation misconduct by Boye and Jauregui, the plaintiffs seek individual damages in excess of $75,000 each, along with attorneys' fees. (Id.)

This amended complaint has inspired a brace of defense motions, including two motions to dismiss which challenge both the court's subject matter jurisdiction as well as the legal and factual sufficiency of the plaintiffs' claims. (Docs. 13 and 15). Additionally, in a case which entails allegations of litigation misconduct by the defendants, Defendant Boye has filed a motion for sanctions which asserts claims of litigation misconduct by plaintiffs' counsel. (Doc. 16).

These motions are fully briefed and are, therefore, ripe for resolution. For the reasons set forth below, it is recommended as follows: The defendants' motions to dismiss (Docs. 13 and 15), should be GRANTED, in part, and DENIED, in part, as follows: The motions should be GRANTED with respect to the Dragonetti Act claims set forth in Count VI of the amended complaint, but DENIED in all other respects. IT IS FURTHER recommended that Defendant Boye's motion for sanctions (Doc. 16) be DENIED.

II.    **Discussion**

A.    **12(b)(1) Motion to Dismiss – Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a complaint for "lack of subject matter jurisdiction." A motion to dismiss under Rule 12(b)(1) thus challenges the power of the court to hear a case or consider a claim. Petruska v. Gannon Univ., 462 F.3d 294, 302 (3d Cir. 2006). When faced with a 12(b)(1) motion, the plaintiff has the burden to "convince the court it has jurisdiction." Gould Elecs., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000); see also Kehr Packages v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991) ("When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion").

Motions under Rule 12(b)(1) come in two varieties. First, a "facial" attack "contests the sufficiency of the pleadings." Common Cause of Pa. v. Pennsylvania, 558 F.3d 249, 257 (3d Cir. 2009) (quoting Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 187-88 (3d Cir. 2006)). Such a facial challenge "attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court 'to consider the allegations of the complaint as true.' " Hartig Drug Company, Inc. v. Senju Pharmaceutical Co., Ltd., 836 F.3d 261, 268 (3d Cir. 2016). Thus, in ruling on such a motion, the court assumes the truth of the allegations in the complaint but must analyze the pleadings to determine whether they state an action

that comes within the court's jurisdiction. <u>United States ex rel. Atkinson v. Pa. Shipbuilding Co.</u>, 473 F.3d 506, 514 (3d Cir. 2007). A facial 12(b)(1) motion should be granted only if it appears certain that the assertion of subject-matter jurisdiction is improper. <u>Kehr Packages</u>, 926 F.2d at 1408-09; <u>Empire Kosher Poultry, Inc. v. United Food & Commercial Workers Health & Welfare Fund of Ne. Pa.</u>, 285 F. Supp. 2d 573, 577 (M.D. Pa. 2003).

In contrast, a "factual" attack on subject-matter jurisdiction asserts that although the pleadings facially satisfy jurisdictional requirements, one or more allegations in the complaint is untrue, which therefore causes the action to fall outside the court's jurisdiction. <u>Carpet Group, Int'l v. Oriental Rug Imps. Ass'n, Inc.</u>, 227 F.3d 62, 69 (3d Cir. 2000); <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). In ruling on factual challenges, a court must consider the merits of the disputed allegations, since "the trial court's ... very power to hear the case" is in dispute. <u>Mortensen</u>, 549 F.2d at 891.

### B.   <u>12(b)(6) Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third

Circuit has aptly noted the evolving standards governing pleading practice in federal

court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief

may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light

most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.,

20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's

bald assertions or legal conclusions when deciding a motion to dismiss." Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court

need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not

alleged." Associated Gen. Contractors of Cal. v. California State Council of

Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a

plaintiff must provide some factual grounds for relief which "requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." <u>Id.</u>, at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u>

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>, at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

11

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true, but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief." In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

Fowler, 578 F.3d at 210-11.

> As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for
> overcoming a motion to dismiss and refined this approach in Iqbal. The
> plausibility standard requires the complaint to allege "enough facts to
> state a claim to relief that is plausible on its face." Twombly, 550 U.S.
> at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard
> when the factual pleadings "allow[ ] the court to draw the reasonable
> inference that the defendant is liable for the misconduct alleged." Iqbal,
> 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955).
> This standard requires showing "more than a sheer possibility that a
> defendant has acted unlawfully." Id. A complaint which pleads facts
> "merely consistent with" a defendant's liability, [ ] "stops short of the
> line between possibility and plausibility of 'entitlement of relief.' "

Burch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. v. Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

### C.   This Court Has Subject Matter Jurisdiction

At the outset, in his motion to dismiss Defendant Boye launches a twofold assault upon this court's subject matter jurisdiction. Noting that the plaintiffs' amended complaint brings solely state law claims premised upon the federal court's diversity jurisdiction, Boye insists, first, that there is no perfect diversity of citizenship in this case and argues, second, that the plaintiffs' claims do not meet the jurisdictional threshold for the exercise of diversity jurisdiction prescribed by statute.

These jurisdictional challenges warrant only brief consideration by this court. In this regard, Boye's jurisdictional arguments challenge the power of the court to entertain this case. On this score it is well-settled that federal courts are courts of limited jurisdiction. As a general rule, there are two primary grounds for federal district court jurisdiction over a civil lawsuit. First, "district courts shall have original jurisdiction of all civil actions *where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between–(1) citizens of different States.*" 28 U.S.C. § 1332(a)(1) (emphasis added). This ground of federal jurisdiction is known as diversity jurisdiction. The second principal ground for

invoking the jurisdiction of a federal court is known as federal question jurisdiction. Under this ground of jurisdiction, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

In the instant case, the plaintiffs are pursuing claims rooted in state law. Therefore, in order for this court to entertain these claims it must be shown that the litigants are citizens of different states and the amount in controversy exceeds $75,000. In his motion to dismiss Boye attacks both of these prerequisites to federal jurisdiction, alleging that because he, McCarthy and Olasimbo were all enrolled together at King's College in Wilkes-Barre, Pennsylvania, there was no diversity of citizenship, and further contending that the amount in controversy does not reach $75,000 as a matter of law.

In our view both of these arguments fail. First, Boye's claim that diversity of citizenship is lacking misconstrues what constitutes citizenship in the context of a case involving collegians. Boye would have us assume that McCarthy, Olasimbo and the defendants were all citizens of Pennsylvania because the students were enrolled together at King's College, thus defeating diversity jurisdiction. Boye's argument, which relies upon the transitory, presence of these parties at King's College during the academic year to contest diversity, ignores the legal standards defining citizenship for purposes of asserting diversity jurisdiction.  As a general

rule an individual is a citizen of the state where he or she is domiciled, meaning the state where he or she is physically present and intends to remain. Holliday v. Prime Care Med., 520 F. Supp. 3d 639, 643 (E.D. Pa. 2021). For purposes of diversity jurisdiction, citizenship is synonymous with domicile, and the domicile of an individual is his or her true, fixed and permanent home and place of habitation. Park v. Tsiavos, 165 F. Supp. 3d 191, 198 (D.N.J. 2016), aff'd, 679 F. App'x 120 (3d Cir. 2017).

With respect to out of state college students like the plaintiffs, Ms. McCarthy and Ms. Olasimbo, the legal tents governing domicile and citizenship analysis can be simply stated: "It is generally presumed that a student who attends a university in a state other than the student's 'home' state intends to return 'home' upon completion of studies." Park v. Tsiavos, 679 F. App'x 120, 125–26 (3d Cir. 2017) (quoting Bradley v. Zissimos, 721 F.Supp. 738, 739 n.3 (E.D. Pa. 1989)). Thus, absent some further proof that the plaintiffs intended to make Pennsylvania their fixed and permanent home, the happenchance that Ms. McCarthy and Ms. Olasimbo were attending college in Pennsylvania as out of state students when Ms. McCarthy was allegedly sexually assaulted by Boye would not destroy diversity jurisdiction. This claim fails.

Boye's contention that the allegations in the complaint fail to meet §1332's $75,000 jurisdictional threshold are equally unavailing. While the plaintiffs bear the

burden of satisfying this jurisdictional threshold at the motion to dismiss stage it has also been held:

> [T]hat burden is not especially onerous. In reviewing the complaint, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938). "Accordingly, the question whether a plaintiff's claims pass the 'legal certainty' standard is a threshold matter that should involve the court in only minimal scrutiny of the plaintiff's claims." Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997).

Auto-Owners Ins. Co. v. Stevens & Ricci Inc., 835 F.3d 388, 395 (3d Cir. 2016).

This is an exacting standard for dismissal of a complaint which alleges on its face the jurisdictional damages threshold prescribed by law, and Boye plainly has not met his burden of showing to a legal certainty that the claim is really for less than the jurisdictional amount.

In this regard, when deciding whether Boye has shown to a legal certainty that this claim has a dollar value of less than $75,000 we begin as we must with the well-pleaded allegations in the complaint. That complaint asserts that Boye raped and sodomized an incapacitated woman who was unable to give consent, indulging in multiple physical violations of his victim. The complaint then asserts that Boye compounded the physical violation of his victim through a calculated pattern of deceit, falsely claiming that the woman he is alleged to have raped had instead victimized him through acts of sexual violence. According to the complaint, Boye

also chose to level false accusations of misconduct against his victim's mother and another classmate in a cynical effort to dissuade them from pursuing the Title IX complaint arising out of his own sexual misdeeds.

Given these well-pleaded facts set forth in the complaint, Boye's challenge to the court's subject matter jurisdiction is little more than an invitation to trivialize the trauma he is alleged to have visited upon the plaintiffs. We reject the notion that the matters alleged here, which involved the premeditated physical and emotional abuse of others, are not worthy of federal court jurisdiction. Therefore, we should decline this invitation, rebuff this jurisdictional challenge and deny the motion to dismiss this complaint under Rule 12(b)(1).

### D.   The Defendants' Rule 12(b)(6) Motions to Dismiss Should Be Granted, in Part, and Denied, in Part.

The defendants have also moved to dismiss a number of the plaintiffs' claims, arguing that the complaint fails to state claims upon which relief may be granted. In particular, these motions challenge the legal sufficiency of the plaintiffs' state law abuse of process, intentional infliction of emotional distress, and Dragonetti Act claims. In addition, Boye argues that, despite his alleged admissions that he engaged in multiple sex acts with Ms. McCarthy at a time when she was impaired and unable to give consent, the fact of her impairment now as a matter of law defeats her state law battery claim.

As discussed below, upon consideration we believe that Count VI of the amended complaint, the Dragonetti Act claim fails at this time because the underlying state defamation case has not concluded. Therefore the motions to dismiss should be granted with respect to Count VI. However, in all other respects the motions to dismiss should be denied.

### 1. The Plaintiffs' Dragonetti Act Claim Fails as a Matter of Law.

At the outset, we find that the plaintiffs' Dragonetti Act claim fails for a single, simple reason. The Dragonetti Act, which created a form of statutory abuse of process claim under state law provides that:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings [if]:
>
> (1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; *and*
>
> *(2) the proceedings have terminated in favor of the person against whom they are brought.*

42 Pa.C.S. § 8351 (bold emphasis added). Thus, a favorable termination of the underlying civil claim brought against the Dragonetti Act plaintiff is an essential prerequisite to such a claim. Hyldahl v. Denlinger, 661 F. App'x 167, 171 (3d Cir. 2016).

In this case, the plaintiffs' Dragonetti Act claim as set forth in Count VI of the amended complaint alleges that Boye and Jauregui brought a Luzerne County defamation lawsuit against Mrs. McCarthy for an improper purpose. However, all parties concede that lawsuit is currently pending in the Court of Common Pleas. (Doc. 42). Therefore, an essential element of this statutory claim—a favorable termination of the underlying lawsuit—is not present in this case. Accordingly, at this juncture the plaintiffs' Dragonetti Act claim fails as a matter of law. Therefore, Count VI of the amended complaint should be dismissed.

### 2. The Remaining Counts of the Complaint Are Not Subject to Dismissal on the Pleadings.

As for the remaining counts of this complaint, upon consideration we recommend that the various defense motions to dismiss be denied.

### a. McCarthy's Battery Claim May Not Be Dismissed

Some of these defense contentions warrant only brief consideration by this court. For example, Defendant Boye has moved to dismiss Count I of the complaint, which alleges that he committed a tortious battery when he raped and sodomized Ms. McCarthy at a time when she was incapacitated and unable to consent. According to Boye, because Ms. McCarthy was incapacitated and is unable to recall this assault her claims fail as a matter of law.

This argument is risible and fails for at least two reasons.

First, as a legal matter it ignores settled Pennsylvania case law which condemns and criminalizes sexual battery committed against persons who are intoxicated or otherwise incapacitated and are unable to consent. Indeed, Pennsylvania courts have expressly rejected the bankrupt legal proposition advanced by Boye, the cynical notion that the victim's unconscious state defeats an assault claim. Quite the contrary, under Pennsylvania law  the fact that someone perpetrates a sexual assault upon a victim who is not in a state to consent proves an assault. See e.g., Commonwealth v. Diaz, 2016 PA Super 291, 152 A.3d 1040, 1047 (2016).

Boye's argument also ignores the well-pleaded facts in the complaint which—fairly construed—recite that Boye specifically targeted Ms. McCarthy for sexual assault precisely because he knew that she was impaired and unable to consent, or recall, details of the assault. Given these factual averments Boye cannot assert the vice he exploited—his predation upon a profoundly impaired victim—as a virtue that entitles him to dismissal of this battery claim.  As to this battery claim, Boye's argument is frivolous and borders upon insulting. It should be rejected by this court.

b. **The Intentional Infliction of Emotional Distress Claim is Not Subject to Dismissal.**

Likewise, given the facts alleged in the amended complaint we conclude that the plaintiffs' intentional infliction of emotional distress claim cannot be dismissed on the pleadings. To be sure, Pennsylvania law sets high benchmarks which must be

21

met to state a tort claim of intentional infliction of emotional distress. As we have

observed:

> Under Pennsylvania law, the elements of a claim for intentional
> infliction of emotional distress are as follows: "(1) the conduct [of the
> defendant] must be extreme and outrageous; (2) it must be intentional
> or reckless; (3) it must cause emotional distress; [and] (4) that distress
> must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct.
> 1997). . . . . It is difficult to make out a cognizable claim for intentional
> infliction of emotional distress, in no small part because "the conduct
> must be 'so extreme in nature as to go beyond all possible bounds of
> decency such that it would be regarded as utterly intolerable to civilized
> society.' " Regan v. Twp. of Lower Merion, 36 F.Supp.2d 245, 251
> (E.D. Pa. 1999).

> Thus, with respect to claims for intentional infliction of emotional
> distress, "courts have been chary to allow recovery for a claim of
> intentional infliction of emotional distress. Only if conduct which is
> extreme or clearly outrageous is established will a claim be proven."
> Hoy v. Angelone, 720 A.2d 745, 753-54 (Pa. 1998). Indeed, the
> Restatement (Second) of Torts instructs that

>> It has not been enough that the defendant has acted with
>> intent which is tortious or even criminal, or that he has
>> intended to inflict emotional distress, or even that this
>> conduct has been characterized by "malice," or a degree
>> of aggravation that would entitle the plaintiff to punitive
>> damages for another tort.

> Restatement (Second) of Torts § 46, cmt. d; Hoy, 720 A.2d at 754. In
> keeping with these restrictive standards, the Pennsylvania Supreme
> Court has provided examples of conduct found to state a claim for
> intentional infliction of emotional distress, and such examples
> demonstrate the extraordinary nature of the theory:

>> Cases which have found a sufficient basis for a cause of
>> action of intentional infliction of emotional distress have
>> had presented only the most egregious conduct. See e.g.,
>> Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118

(1970) (defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents (recognizing but not adopting section 46)); <u>Banyas v. Lower Bucks Hospital</u>, 293 Pa. Super. 122, 437 A.2d 1236 (1981) (defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); <u>Chuy v. Philadelphia Eagles Football Club</u>, 595 F.2d 1265 (3d. Cir. 1979) (defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false).

<u>Hoy</u>, 720 A.2d at 754.

<u>McCullough v. Wellspan York Hosp.</u>, No. 1:20-CV-979, 2021 WL 711476, at *4 (M.D. Pa. Feb. 5, 2021), <u>report and recommendation adopted,</u> No. 1:20-CV-979, 2021 WL 694800 (M.D. Pa. Feb. 23, 2021). While these are exacting legal standards prescribed by state law to state a claim, it is also clear from the Restatement Second of Torts that the type of outrageous conduct which will be sufficient to state a claim includes unwarranted claims of sexual misconduct. For example, one of the illustrations of this tort cited with approval in the Restatement involves the following scenario describing false allegations of sexual misconduct:

> A, the principal of a high school, summons B, a schoolgirl, to his office, and abruptly accuses her of immoral conduct with various men. A bullies B for an hour, and threatens her with prison and with public disgrace for herself and her parents unless she confesses. B suffers severe emotional distress, and resulting illness. A is subject to liability to B for both.

Restatement (Second) of Torts § 46, Illustration 6 (1965). Fairly construed, this complaint alleges that the defendants did precisely what the commentary to the Restatement indicates is an intentional infliction of emotional distress since Boye and Jauregui are alleged to have falsely accused Ms. McCarthy of sexual misconduct. Moreover, cases construing this tort have extended it to a host of situations involving allegations of sexual abuse, reasoning that sexual violence is outrageous conduct which is abhorrent and goes beyond all bounds of decency. See e.g., Kane v. Chester Cnty. Dep't of Child., Youth & Fams., 10 F. Supp. 3d 671, 693 (E.D. Pa. 2014); Doe v. Schneider, 667 F. Supp. 2d 524, 533 (E.D. Pa. 2009); Chancellor v. Pottsgrove Sch. Dist., 501 F. Supp. 2d 695, 711 (E.D. Pa. 2007).

Given the allegations set forth in the plaintiffs' amended complaint, we have little difficulty concluding that the conduct described by the plaintiffs could be found to be sufficiently outrageous to expose the defendants to tort liability. Fairly construed, this pleading alleges that Boye caused an obviously intoxicated and incapacitated Devin McCarthy to be lured back to his dorm room where he repeatedly engaged in sex acts without her consent. It is then alleged that Boye, and his counsel Jauregui, fabricated what they knew to be a false account, claiming that Boye's victim had, in fact, sexually abused Boye in the past in an attempt to dissuade her from pursuing this rape allegation. These pleadings, in our view, describe conduct which, if proven, would be outrageous. Therefore, the complaint states a

colorable intentional infliction of emotional distress claim which may not be dismissed at the pleadings stage.

### c. **The Complaint Adequately Alleges Abuse of Process Claims**

While this aspect of the defense motions presents a somewhat closer case, we also find at this threshold stage of the proceedings that the plaintiffs have sufficiently stated common law abuse of process claims arising out of what are alleged to have been false Title IX complaints, Title IX counterclaims, and civil lawsuits filed for the purpose of intimidating the plaintiffs and deterring them from pursuing rape claims against Boye. Like the tort of intentional infliction of emotional distress, under Pennsylvania law a common law claim of abuse of process demands much of a plaintiff.

With respect to this claim, it is well-settled that:

> Under Pennsylvania law, "[t]he gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it[.]" McGee v. Feege, 535 A.2d 1020, 1023, 517 Pa. 247, 253 (Pa. 1987) (quoting Publix Drug Co. v. Breyer Ice Cream Co., 32 A.2d 413, 415, 347 Pa. 346, 349-50 (Pa. 1943)). Among other prerequisites, a claim for abuse of process requires a plaintiff to establish that the defendant used a legal process against the plaintiff primarily to accomplish a purpose for which the process was not designed. Hart v. O'Malley, 436 Pa. Super. 151, 647 A.2d 542, 551 (Pa. Super. Ct. 1994); Rosen v. American Bank of Rolla, 426 Pa. Super. 376, 627 A.2d 190, 192 (Pa. Super. Ct. 1993). To satisfy the "perversion of process" element, the plaintiff must show "[s]ome definite act or threat not authorized by the

25

process, or aimed at an objective not legitimate in the use of the process." Id. at 170-71, 627 A.2d 190 (quoting Shaffer v. Stewart, 326 Pa.Super. 135, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984)). Furthermore, "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id. As the Third Circuit Court of Appeals noted, "the point of liability is reached when 'the utilization of the procedure for the purpose for which it was designed becomes so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure.' " Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 308 (3d Cir 2003) .... Thus, wide latitude is given to those who turn to legal processes as a means to accomplish a host of results.

Taliaferro v. Darby Township Zoning Board, No. 03-3554, 2008 WL 2078992. *8 (E.D. Pa. May 15, 2008). Therefore, since the "tort of 'abuse of process' is defined as the use of a legal process against another 'primarily to accomplish a purpose for which it is not designed' [in order to] establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff.' Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. 1998) (citations omitted)." O'Hara v. Hanley, No. 08-1393, 2009 WL 2043490, *11 (W.D. Pa. July 8, 2009).

In short, in order to state a valid state claim for abuse of process under Pennsylvania law the plaintiffs must allege facts that show that the legal process was used "primarily to accomplish a purpose for which the process was not designed." Id. Put another way, the gravamen of this state law tort is "use [of] legal process as a 'tactical weapon to coerce a desired result that is not the legitimate object of the process.' Gen. Refractories v. Fireman's Fund Ins., 337 F.3d 297 (3d Cir. 2003) (quoting McGee v. Feege, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa. 1987) )." O'Hara v. Hanley, supra, 2009 WL 2043490, *12. Construed in this way, the state tort of abuse-of-process requires a plaintiff to plead facts which show that the use of some legal process was not designed to accomplish its stated goal, but rather was intended and perverted to some other goal, solely to harass.

26

Brunelle v. City of Scranton, No. 3:15-CV-960, 2018 WL 3725731, at *10 (M.D. Pa. July 17, 2018), report and recommendation adopted, No. 3:15-CV-960, 2018 WL 3715718 (M.D. Pa. Aug. 3, 2018). Moreover, unlike a statutory Dragonetti Act claim, under Pennsylvania law the common law tort of abuse of process does not require the plaintiff to demonstrate that the underlying proceeding was terminated in her favor. Hvizdak v. Linn, 2018 PA Super 170, 190 A.3d 1213, 1229 (2018) ("Unlike an action for wrongful use of civil proceedings under 42 Pa.C.S. § 8351, the tort of abuse of process does not require the plaintiff to demonstrate that the underlying action terminated in his favor.")

Further, when considering an abuse of process claim "[t]he word 'process' as used in the tort of abuse of process 'has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process.' " Rosen v. Am. Bank of Rolla, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993). Thus, "the Supreme Court [of Pennsylvania] has interpreted the tort broadly, making clear that it 'will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process.' " Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 305 (3d Cir. 2003).

Cast against this legal backdrop, we understand the defendants to make a twofold assault upon these abuse of process claims. First, they generally argue that the allegations in the complaint fail to describe an abuse of process.

27

We disagree. At this stage where we are confined to a consideration of the well-pleaded facts in the complaint, we believe that the plaintiffs have adequately alleged that the defendants endeavored to use process to a corrupt end by advancing and pursuing meritless assertions solely to attempt to intimidate a rape victim and her family and friends from pursuing claims of sexual assault.

The defendants' motions raise a second, somewhat closer, legal question pertaining to whether an abuse of process claim lies in the setting of the school's administrative Title IX hearings. On this score, defendants argue that these proceedings simply do not have sufficient legal trappings to constitute "process" for purposes of an abuse of process claim.

While this issue is not entirely free from doubt, upon reflection we conclude that the Title IX proceedings should be regarded as a form of process giving rise to an abuse of process claim. We reach this conclusion guided first by the expansive interpretation of this tort that has long been embraced by Pennsylvania courts. Rosen, 627 A.2d at 192. Moreover, we note that at least one state appellate court decision has acknowledged that quasi-judicial administrative disciplinary hearings constitute a form of process giving rise to a potential abuse of process claim. Greenberg v. McGraw, 2017 Pa. Super 136, 161 A.3d 976, 987 (2017).[1]

---

[1] In Greenberg the Superior Court appears to have extended abuse of process claims to quasi-judicial administrative discipline hearings, while holding that the mere initiation of a false claim is insufficient to state a claim for abuse of process. Id.

This broad interpretation of what constitutes "process" for purposes of abuse of process claims has, in turn, been expressly adopted by other courts which have held that "quasi-judicial contested administrative determinations or proceedings that establish the legal rights, duties, or privileges of a party after a hearing and that embody sufficient attributes of judicial proceedings may generate causes of action for . . . abuse of process." Hillside Assocs. v. Stravato, 642 A.2d 664, 669 (R.I. 1994). On balance, we believe that this view, which extends abuse of process claims to quasi-judicial disciplinary proceedings which are accompanied by a full panoply of due process protections, represents the proper scope of this tort under Pennsylvania law.

Having concluded that abuse of process claims under Pennsylvania law embrace certain types of quasi-judicial disciplinary hearings, we have little difficulty concluding that a Title IX disciplinary hearing would constitute the type of process encompassed by this tort. These disciplinary proceedings are expressly authorized by federal regulations, 34 C.F.R. § 106.45, promulgated pursuant to Title IX's

---

Rather, according to the court there must be some indication that the legal process was later perverted to an improper end by the defendant. In this case, liberally construing the complaint we believe that this requirement is met since it is alleged that the defendants initiated and pursued false claims against the plaintiffs for the improper purpose of coercing them into abandoning a meritorious sexual assault claim. With our judgment cabined by the pleadings, these allegations are sufficient in our view to state a claim. The question of whether any party can prove what they allege must await another day.

statutory command that: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Moreover, these regulations provide the parties to a Title IX proceeding with a full range of procedural rights including notice, an opportunity to be heard and present witnesses and evidence, the assistance of retained counsel, and a right to appeal adverse decisions. 34 C.F.R. § 106.45. Therefore, these disciplinary hearings establish the legal rights, duties, or privileges of a party after a process that embodies the attributes of judicial proceedings. As such, they are—and should be deemed to be—the type of legal process which, if abused, gives rise to an abuse of process claim.

Having found that abuse of process claims embrace both judicial proceedings and quasi-judicial Title IX disciplinary proceedings, and further concluding that the plaintiffs' complaint otherwise adequately pleads abuse of process claims, it is recommended that the motions to dismiss these claims be denied.

### E.  The Defendant's Motion for Sanction Should Be Denied.[2]

Finally, in this case marked by the plaintiffs' allegations of litigation misconduct against the defendants, Defendant Boye has filed a motion styled as a

---

[2] While a sanctions motion may be deemed a non-dispositive matter which we may address by opinion and order, 28 U.S.C. §636, given that this sanctions motion is inextricably intertwined with the merits arguments advanced by the parties, we are addressing thus motion through a Report and Recommendation.

motion for inherent sanctions, which invites the court to sanction plaintiffs' counsel for pursuing what Boye regards as false and meritless claims. (Doc. 16). As we construe it this sanctions motion is largely bound up with, and defined by, the parties' merits litigation since the gravamen of the sanctions motions is Boye's insistence that plaintiffs' counsel should be sanctioned for bringing patently meritless claims against the defendants for some improper purpose. Construed in this fashion, we recommend that this sanctions motion be denied since we have found that the plaintiffs' complaint, on the whole, states plausible claims for relief.

The legal standards which govern motions for sanctions are familiar ones.

At the outset, it is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it. See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir.2007). Indeed, the inherent power of the Court to act in this area has long been recognized by the United States Supreme Court, which has held that:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the

control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc. 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

O'Donnell v. Pennsylvania Dep't of Corr., No. 3:09-CV-1173, 2011 WL 3163230, at *5–6 (M.D. Pa. July 26, 2011).

Sanctions decisions rest in the sound discretion of the court. Id. However, a basic, but pivotal, aspect of the exercise of discretion in this area, . . . . [commands] that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc. 501 U.S. at 44–45 (citation omitted).

O'Donnell, 2011 WL 3163230, at *6.

Given this admonition that we exercise our inherent power to sanction with restraint and discretion, we believe the motion to sanction plaintiffs' counsel at the outset of this litigation is premature and inappropriate. Moreover, this motion would invite us to opine on the ultimate merits of the motives of all parties, a task which should not be undertaken at this stage of the lawsuit, particularly when we have concluded that the plaintiffs' complaint for the most part asserts plausible claims which cannot be dismissed on the pleadings alone. Therefore, this sanctions motion should also be denied.

## III. <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED THAT the defendants' motions to dismiss (Docs. 13 and 15), should be GRANTED, in part, and DENIED, in part, as follows: The motions should be GRANTED with respect to the Dragonetti Act claims set forth in Count VI of the amended complaint, but DENIED in all other respects. IT IS FURTHER recommended that Defendant Boye's motion for sanctions (Doc. 16) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2d  day of June 2023.

                                        _S/ Martin C. Carlson_
                                        Martin C. Carlson
                                        United States Magistrate Judge