UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA MCCARTHY,           :
DEVIN MCCARTHY, and     :
OLUWATOMISIN OLASIMBO, :
                               :
          Plaintiffs,    :    CIVIL ACTION
                               :
  - against -           :
                               :    JURY TRIAL DEMANDED
RAUL JAUREGUI and       :
DANIEL BOYE,           :
                               :    No. 3:21-cv-1759
          Defendants.   :

PLAINTIFFS' BRIEF IN OPPOSITION TO THE
OBJECTIONS OF DEFENDANT RAUL JAUREGUI TO
REPORT AND RECOMMENDATION OF UNITED STATES
MAGISTRATE JUDGE MARTIN C. CARLSON DATED JUNE 2, 2023

DYLLER & SOLOMON, LLC

Barry H. Dyller, Esq.
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Table of Authorities ................................................................... i-ii

INTRODUCTION ..................................................................... 1

STATEMENT OF FACTS ........................................................... 3

Boye's Sexual Assault of Devin McCarthy;
Debra McCarthy's Email to Kings College ................................... 3

Jaurequi's and Boye's Abuses of Process .................................. 3

Results of the Various Claims ................................................... 4

ARGUMENT ........................................................................... 5

POINT ONE ............................................................................ 5

MS. MCCARTHY HAS STANDING TO BRING COUNT TWO ................... 5

POINT TWO ............................................................................ 8

MS. MCCARTHY AND MS. OLASIMBO STATE CLAIMS
FOR ABUSE OF PROCESS IN COUNTS THREE AND FOUR ................. 8

Title IX ................................................................................. 11

Historical Context: The Limited 2011 Title IX Enforcement Mechanism .... 12

The 2020 Title IX Rule's Creation of a "Legal Process" ............................ 14

Additional Evidence that the Title IX Proceedings Were a Legal Process:
The Title IX Proceedings Were Quasi-Judicial in Nature ........................... 19

POINT THREE........................................................................................22

MS. MCCARTHY STATES A CLAIM FOR INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS,
OR IN THE ALTERNATIVE, CAN STATE SUCH A CLAIM ......................22

CONCLUSION........................................................................................25

CERTIFICATE PURSUANT TO LR 7.8(b) ...............................................26

CERTIFICATE OF SERVICE ..................................................................26

# TABLE OF AUTHORITIES

## CASES

*General Refractories Co. v. Fireman's Fund Ins. Co*,
337 F.3d 297 (3d Cir. 2003) ................................................................. 7, 10

*Greenberg v. McGraw*,
2017 Pa. Super. 136, 161 A.3d 976 (2017) ............................................. 11

*Hart v. O'Malley*,
676 A.2d 222 (Pa. 1996) .........................................................................6-7

*Hart v. O'Malley,*
647 A.2d 542 (Pa. Super. 1994) ............................................................... 6

*Khan v. Yale University*,
511 F.Supp.3d 213 (D. Conn. 2021) ...................................................20-21

*McGee v. Feege,*
535 A.2d 1020 (Pa. 1987) ....................................................................... 10

*Overall v. University of Pennsylvania,*
412 F.3d 492 (3d Cir. 2005) ...............................................................19-20

*Ralston v. Garabedian*, No. 19-1539,
2021 WL 6072881 (E.D.Pa. Dec. 23, 2021) ............................................ 21

*Rosen v. Am. Bank of Rolla,*
627 A.2d 190 (Pa. Super.1993) ...................................................... 7, 9, 18

*Shiner v. Moriarty,*
706 A.2d 1228 (Pa. Super. 1998) ..........................................................9-10

*Werner v. Plater-Zyberk,*
799 A.2d 776 (Pa. Super. 2002) .............................................................. 10

## STATUTES

Title IX, 20 U.S.C. § 1681(a) ...............................................................passim

## ADMINISTRATIVE REGULATIONS

34 C.F.R. Part 106 ................................................................................. 11,15

34 C.F.R. 106.45 ("The 2020 Title IX Rule")…………………………..passim

## RULES

*L.R. 7.8* ................................................................................................ 26

Plaintiffs Debra McCarthy, Devin McCarthy and Oluwatomisin Olasimbo, by their attorney Barry H. Dyller of Dyller & Solomon, LLC, respectfully submits this brief in opposition to defendant Raul Jauregui's objections (Docs. 45 and 45-1) to the Report and Recommendation ("R&R") of Magistrate Judge Martin C. Carlson (Doc. 43).[1]

## INTRODUCTION

After defendant Boye raped plaintiff Devin McCarthy in a King's College building, Devin McCarthy's mother contacted King's College's Title IX Coordinator and asked that he investigate.  Shortly thereafter, Devin McCarthy filed a Title IX Complaint within King's College pursuant to Title IX and its detailed federal regulations.

Boye hired defendant attorney Raul Jauregui.  Together, Boye and Jauregui launched a burn-down-the-house defense, including filing a baseless counterclaim against Devin McCarthy claiming that she sexually assaulted him; filing a baseless claim against Devin McCarthy's roommate claiming she intimidated witnesses; and filing a baseless state court lawsuit against Devin McCarthy's mother claiming that she defamed him by reporting the rape to King's College's Title IX Coordinator.  Defendants

---

[1] Defendant Boye did not object to the R&R.

made these filings not because Boye was somehow a victim of Devin McCarthy, Debra McCarthy or Oluwatomisin Olasimbo.  Rather, Boye and Jauregui abused those processes for the improper goal of intimidating Devin McCarthy to withdraw her Title IX complaint against Boye.

Jauregui would have this Court interpret the law extremely narrowly.  But Pennsylvania law on the tort of abuse of process is interpreted broadly, encompassing more than abuse of a court process, and protects more than named defendants in a legal proceeding.

In his objections, Jauregui raises three points.  Below, we discuss the Amended Complaint's allegations, and then address Jauregui's objections, including Magistrate Judge Carlson's discussion of those points.[2]

_____

[2] In this lawsuit, Jauregui is appropriately represented by counsel. While we submit that Jauregui's counsel is wrong about the applicable law, Jauregui's counsel is appropriate and professional.

In a separate, declaratory judgment lawsuit (3:23-cv-450-RDM) concerning the amount of insurance coverage available to satisfy a judgment in this lawsuit, Jauregui appears *pro se*.  The narrow issue involved in that lawsuit is the amount of insurance coverage available.  The even narrower issue about which Magistrate Judge Carlson issued a Report and Recommendation is whether this Court has subject matter jurisdiction to hear that lawsuit.

Freed of the constraints of his lawyer's professionalism, Jauregui uses his objections in that lawsuit as a vehicle (1) to separately address this lawsuit, and (2) to attack undersigned counsel, undersigned counsel's wife, and to accuse counsel of racism (only Jauregui has ever mentioned race in any filing in this or any related proceeding).  While Jauregui's attacks have zero

## STATEMENT OF FACTS

Boye's Sexual Assault of Devin McCarthy;
Debra McCarthy's Email to King's College

On August 29, 2020, Daniel Boye sexually assaulted Devin McCarthy ("**Ms**. McCarthy"). (Amended Complaint ("AC"), ¶¶9-59).

On September 16, 2020, Debra McCarthy ("**Mrs.** McCarthy") emailed King's College's Title IX Coordinator to confidentially report that her daughter was sexually assaulted by Boye. (AC, ¶¶60-65).

Ms. McCarthy filed a Title IX Complaint at King's College alleging that Boye raped her. (AC, ¶43).

Jauregui's and Boye's Abuses of Process

After Boye admitted to a King's College Title IX official that he had sex with an extremely intoxicated Ms. McCarthy (AC, ¶¶48-57), Boye hired Jauregui to represent him at the Title IX hearing for Ms. McCarthy's complaint against him. (AC, ¶66). Jauregui then had Boye file a baseless and retaliatory Title IX counterclaim against Ms. McCarthy to delay the hearing of Ms. McCarthy's complaint, retaliate against Ms. McCarthy, and

_____

merit, in this brief we do not address Jauregui's personal writings in that other lawsuit; we remain focused on the substance of this lawsuit and the actual issues involved. We therefore solely address the substance of the Report and Recommendation in this lawsuit and Jauregui's counsel's objection thereto.

intimidate Ms. McCarthy into dropping her complaint. (AC, ¶¶67-68). Boye soon admitted to a King's College Title IX official that there was no evidentiary basis for the counterclaim. (AC,¶72). Boye's and Jauregui's efforts to intimidate Ms. McCarthy failed; she did not drop her Title IX Complaint. (AC, ¶76).

Defendants made a second attempt to intimidate Ms. McCarthy to drop her Title IX Complaint by filing a baseless and retaliatory Title IX Complaint against Ms. Olasimbo. (AC, ¶ 77). Boye and Jauregui made a third attempt to intimidate Ms. McCarthy to drop her Title IX Complaint by filing a baseless and retaliatory lawsuit against her mother, Debra McCarthy, in the Luzerne County Court of Common Pleas.  (AC, ¶¶ 85, 90). The Common Pleas Lawsuit alleged that Mrs. McCarthy defamed Boye. (AC, ¶ 87). The alleged basis for the lawsuit was Mrs. McCarthy's email to King's College's Title IX Coordinator, in which she properly and confidentially reported that Boye sexually assaulted her daughter. (AC, ¶ 88). Ms. McCarthy refused to drop her Title IX Complaint. (AC, ¶91).

<u>Results of the Various Claims</u>

King's College dismissed defendants' Title IX claim against Ms. Olasimbo before the hearing for lack of sufficient evidence. (AC, ¶92).

King's College found Ms. McCarthy not responsible for the alleged conduct in Boye's Title IX counterclaim against Ms. McCarthy. (AC, ¶92).

The Common Pleas Lawsuit against Mrs. McCarthy is ongoing.

King's College found Boye responsible for forcible rape of Ms. McCarthy and expelled him. (AC, ¶92).

## ARGUMENT

### POINT ONE

### MS. MCCARTHY HAS STANDING TO BRING COUNT TWO[3]

In his objections, Jauregui argues that "[i]n connection with count II of the amended complaint, there is no allegation that any legal process in the Luzerne County action was directed to Ms. McCarthy." (Doc. 45, ¶ 2). This is not accurate. The Amended Complaint alleges "the intent of the suit/process lodged against Mrs. McCarthy was to intimidate Ms. McCarthy into dropping her Title IX action." (AC, ¶90). By the terms of Jauregui's objection and that it is wrong, the objection should be overruled and the R&R approved or adopted.

---

[3] In his motion to dismiss (Doc. 13), Jauregui only moved for dismissal of Counts Three through Six of the Amended Complaint. Nonetheless, because Jauregui argued in his brief that Count Two of the Amended Complaint should be dismissed and because Magistrate Judge Carlson addressed and rejected his argument, we discuss Count Two as if it were part of the Motion.

Despite the limited actual objection, Jauregui expands slightly on his argument in his brief. Jauregui argues that since Ms. McCarthy was not a party to the Common Pleas Lawsuit, she cannot assert a claim for abuse of process related to that lawsuit. (Doc. 45-1, at 1-2).

The issue is whether it is proper for Ms. McCarthy to allege and prove that defendants Jauregui and Boye filed the defamation lawsuit against Ms. McCarthy's mother to intimidate Ms. McCarthy into withdrawing her claim that Boye raped Ms. McCarthy?

In *Hart v. O'Malley*, 676 A.2d 222 (Pa. 1996), the Pennsylvania Supreme Court recognized that non-parties to an underlying action can bring a case for wrongful use of civil proceedings in certain situations.[4] The Court, referring to the general rule that one who was not a party to the underlying action cannot sue, reasoned that, "[w]e think it necessary, however, to allow an exception to that rule in recognition of the nature and effect of certain civil proceedings….[where] a civil proceeding can operate

[4] In *Hart*, the plaintiffs also brought an abuse of process claim, which was dismissed on grounds unrelated to the issue of standing discussed above. *Hart*, 647 A.2d 542, 551 (Pa. Super. 1994). The court did not indicate in any way that the *Hart* plaintiffs, had they stated a claim for abuse of process, would have been precluded from having standing to do so. The *Hart* court's reasoning supports Ms. McCarthy's right to sue for abuse of process related to defendants' defamation lawsuit against her mother.

against a non-party in a direct and particular way as fully as against a party, perhaps more so." *Hart*, 676 A.2d at 225.

As in *Hart,* Ms. McCarthy was affected so directly and substantially by the Common Pleas Lawsuit that it operated against her in a direct and particular way. Ms. McCarthy had to choose between subjecting her mother to frivolous, costly and frightening litigation far from Mrs. McCarthy's home, or succumb to Jauregui's and Boye's litigation strategy to cause her to withdraw her claim that Boye raped her.

In the R&R (Doc. 43), Magistrate Judge Carlson wrote in detail about the tort of abuse of process, including that:

> when considering an abuse of process claim "[t]he word 'process' as used in the tort of abuse of process 'has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process.'" *Rosen v. Am. Bank of Rolla*, 426 Pa. Super. 376, 381, 627 A.2d 190, 192 (1993). Thus, "the Supreme Court [of Pennsylvania] has interpreted the tort broadly, making clear that it 'will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process.'" *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 305 (3d Cir. 2003).

(Doc. 43, at 27).

The Pennsylvania Supreme Court thus broadly construes the tort of abuse of process. It is not a stretch to find that the Common Pleas Lawsuit

is an abuse of process designed to intimidate Ms. McCarthy to drop her internal King's College Title IX complaint against Boye.  Further, that Common Pleas Lawsuit is part of defendants' comprehensive strategy of intimidation, including their retaliatory counterclaims within King's College against Ms. McCarthy and her roommate Ms. Olasimbo.

It is difficult to imagine a situation in which a non-party (Ms. McCarthy) is more directly affected by a civil proceeding than Ms. McCarthy was by the Common Pleas Lawsuit against her mother.

This Court should reject Jauregui's objection, sustain Magistrate Judge Carlson's R&R, and hold that Ms. McCarthy states a claim of abuse of process relating to defendants' bringing the Common Pleas Lawsuit.[5]

## POINT TWO

**MS. MCCARTHY AND MS. OLASIMBO STATE
CLAIMS FOR ABUSE OF PROCESS IN COUNTS THREE AND FOUR**

Jauregui objects to that part of the Report and Recommendation that finds that the detailed process mandated by the Code of Federal Regulations and utilized by King's College was somehow not a process subject to the state tort of abuse of process.

---

[5] We also note that Jauregui does not object to that part of the Report and Recommendation as to the abuse of process claim brought by Mrs. Debra McCarthy.

As discussed above, Pennsylvania law broadly defines the tort of abuse of process. "The tort of 'abuse of process' is defined as the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" *Rosen v. Am. Bank of Rolla*, 627 A.2d 190, 192 (Pa. Super. 1993). "The word 'process' as used in the tort abuse of process 'has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." *Id.*

In *Shiner v. Moriarty*, 706 A.2d 1228 (Pa. Super. 1998), the defendants appealed a jury verdict for, among other things, abuse of process. Defendants argued they did not employ any "process." *Id.* at 1234. The Superior Court detailed the defendants' (unsuccessful) argument that Pennsylvania law supports only a narrow definition of "process." "They argue that 'process' is a restrictive term, requiring a party to identify some form of coercive legal process such as a subpoena or a writ that was employed to an improper purpose." *Id.* at 1237. The Superior Court rejected that argument. "This argument is unavailing. This narrow view of the scope of this tort does not appear to be consistent with Pennsylvania law." *Id.* Citing to *Rosen*, *supra*, for the proposition that "'[t]he word process as used in the tort of abuse of process has been interpreted broadly…,'" *Shiner* explained that the definition of process under Pennsylvania law is

"expansive." *Id.* at 1237.

The Third Circuit also recognizes Pennsylvania's broad interpretation of the tort of abuse of legal process. "[T]he Supreme Court [of Pennsylvania] has interpreted the tort broadly, making clear that it "'will not countenance the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *General Refractories Co. v. Fireman's Fund Ins. Co*, 337 F.3d 297 (3d Cir. 2003) (*citing McGee v. Feege,* 535 A.2d 1020, 1026 (Pa. 1987). "[T]his broader interpretation [is] the modern trend." *General Refractories Co.*, 337 F.3d at 305 (citations omitted). "[A] court must look at the legal process used and decide whether it is used primarily 'to benefit someone in *achieving a purpose which is not the authorized goal of the procedure* in question.'" *Id.* (*citing Werner v. Plater-Zyberk*, 799 A.2d 776, 785 (Pa.Super. 2002) (emphasis in original)).

The R&R correctly concluded that defendant's motion to dismiss counts three and four of plaintiffs' Amended Complaint should be denied because, as discussed below, the Title IX proceedings at King's College were a legal process. (Doc. 43, at 28-30). Magistrate Judge Carlson was:

> guided first by the expansive interpretation of this tort that has long been embraced by Pennsylvania courts. *Rosen*, 627 A.2d at 192. Moreover, we note that at least one state appellate

court decision has acknowledged that quasi-judicial
administrative disciplinary hearings constitute a form of process
giving rise to a potential abuse of process claim. *Greenberg v.
McGraw*, 2017 Pa. Super 136, 161 A.3d 976, 987 (2017).

Doc. 43, at 28.

Magistrate Judge Carlson then looked at the detailed processes

mandated by 34 C.F.R. § 106.45, and correctly concluded that "these

regulations provide the parties to a Title IX proceeding with a full range of

procedural rights…."  Doc. 43, at 30.  After discussing some of those rights,

the R&R concluded that "they are – and should be deemed to be – the type

of legal process which, if abused, gives rise to an abuse of process claim."

*Id.*

Below, we discuss Title IX and its implementing regulations'

processes.

Title IX

34 C.F.R. Part 106 is the relevant federal regulation governing Title

IX.[6]  In 2011, the regulations did not codify a formal grievance procedure.

But in 2020, the law changed dramatically.  The federal Title IX rule that

applied to the King's College proceedings ("the 2020 Title IX Rule") codifies

a formal grievance procedure, located at 34 C.F.R. 106.45, requiring all

_____

[6] 20 U.S.C. § 1681(a).

postsecondary schools to uniformly apply, as discussed *infra.* The formal

grievance procedure contains multiple subparts. Together, they comprise

the 2020 Title IX Rule, a comprehensive and required legal process for

adjudication of Title IX Complaints filed within colleges and universities.

The legal process created by the 2020 Title IX Rule, titled Grievance

**Process** for Formal Complaints of Harassment, 34 C.F.R. 106.45

(emphasis added) is a completely new and fully integrated legal process

which did not exist before August 2020.

<u>Historical Context: The Limited 2011 Title IX Enforcement Mechanism</u>

On April 4, 2011, the United States Department of Education's Office

of Civil Rights released what is known as the "Dear Colleague Letter,"

which provided guidance about Title IX for colleges and universities.[7]

The Dear Colleague Letter was groundbreaking in that it made sexual

violence and sexual harassment focal points of Title IX compliance for

colleges and universities.  However, it contained only administrative

guidance which never went through a formal regulatory review process.  It

left each college and university to grapple on its own with the specifics of

---

[7] https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf

implementing Title IX.

The limitations and failings of the Dear Colleague Letter soon became apparent. Each college and university, in separate efforts to comply with the Dear Colleague Letter, created its own internal Title IX procedures which, though likely unintentionally, trampled on the federal rights of the accused. The following are examples of problems with the Dear Colleague Letter's Title IX guidance:

• It did not require schools to permit parties in internal Title IX proceedings to be represented by attorneys. Dear Colleague Letter, *supra* at 12.

• It "strongly discourage[d] schools from allowing the parties personally to question or cross-examine each other during the hearing." *Id.*

• It allowed schools to permit complainants to make an internal Title IX Complaint anonymously, leaving a respondent to defend him or herself while in the dark about the specific allegations and accuser. *Id.* at 5.

• In the absence of codification of formal grievance procedures in the federal regulations governing Title IX, the Dear Colleague Letter allowed schools to adopt and enforce their own grievance

procedures: "procedures adopted by schools will vary in detail, specificity, and components…." *Id.* at 9.

• The Dear Colleague Letter did not require schools to provide an internal appeal process. *Id.* at 12.

• The Dear Colleague Letter specified that only public and state-supported schools were required to provide due process to the accused. *Id.*

The Dear Colleague Letter constituted guidance only. There was no process, let alone a formal, mandated legal process, in college Title IX proceedings. This changed in 2020, with the creation and codification of a formal legal process with formal, mandated rules applicable across the country.

The 2020 Title IX Rule's Creation of a "Legal Process"

In August 2020, there was a drastic change in the law, with the passage of the 2020 Title IX Rule. The 2020 Title IX Rule cured the deficiencies of the Dear Colleague Letter's guidance. Further, the 2020 Title IX Rule was not mere administrative guidance like the 2011 Dear Colleague Letter. Rather, the 2020 Title IX Rule underwent a formal regulatory review process and was codified within the federal regulations

governing Title IX, 34 C.F.R. Part 106.

The 2020 Title IX Rule was in place when defendants brought Title IX claims within King's College as a counterclaim against Devin McCarthy and as a separate claim against Ms. Olasimbo. The process used was the mandated formal process with a full panoply of procedural rights and duties to all participants.

Due to its ambiguity and intentional variability, the Dear Colleague Letter created a non-system in which each college or university created its own, often fundamentally flawed, system to adjudicate internal Title IX Complaints. The 2020 Title IX Rule abandoned this non-system of private rule making. In place of the Dear Colleague Letter, the 2020 Title IX Rule created a highly structured system applicable across the United States, akin to the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

The drastic change in college Title IX proceedings as of the 2020 Title IX Rule's implementation renders such proceedings virtually indistinguishable from litigation initiated in a court. The 2020 Title IX Rule, 34 C.F.R. 106.45 Grievance Process for Formal Complaints of Harassment, codifies, *inter alia*, the following procedures:

   • The 2020 Title IX Rule requires schools to presume that the

respondent is innocent or "not responsible." 34 C.F.R. 106.45(b)(1)(iv).

• The 2020 Title IX Rule requires schools to uniformly apply a burden of proof or "standard of evidence." 34 C.F.R. 106.45(b)(1)(vii).

• The 2020 Title IX Rule requires schools to provide an appeals process. 34 C.F.R. 106.45(b)(8).

• The 2020 Title IX Rule forbids schools from invading legally recognized evidentiary privileges. 34 C.F.R. 106.45(b)(1)(x).

• The 2020 Title IX Rule requires schools to train their Title IX officials to understand "issues of relevance of questions and evidence, including when questions about the complainant's sexual predisposition or prior sexual behavior are not relevant." 34 C.F.R. 106.45(b)(1)(iii).

• The 2020 Title IX Rule requires schools to provide respondents with "Notice of the allegations…[with] sufficient details [such as]...the identities of the parties involved in the incident, if known, the conduct allegedly constituting sexual harassment…and the date and location of the alleged incident." 34 C.F.R. 106.45(b)(2)(i)(B).

• The 2020 Title IX Rule requires schools to permit attorneys to serve as advisors to the parties. 34 C.F.R. 106.45(b)(5)(iv).

• The 2020 Title IX Rule requires schools to allow respondents to inspect and review all evidence against them. 34 C.F.R. 106.45(b)(5)(vi).

• The 2020 Title IX Rule requires schools to hold live hearings during which each party can conduct cross-examination, 34 C.F.R. 106.45(b)(6)(i), and present any witnesses, including fact and expert witnesses, and any inculpatory or exculpatory evidence. 34 C.F.R. 106.45(b)(5)(ii).

• The 2020 Title IX Rule mandates that schools permit only evidentiarily relevant cross-examination questions to be asked during the live hearings. 34 C.F.R. 106.45(b)(6)(i).

• The 2020 Title IX Rule requires schools to provide students who do not have an advisor with an advisor without fee or charge. 34 C.F.R. 106.45(b)(6)(i).

• The 2020 Title IX Rule contains a rape shield provision nearly identical to Fed.R.Evid. 412. 34 C.F.R. 106.45(b)(6)(i).

• The 2020 Title IX Rule mandates that schools make a written determination regarding guilt or "responsibility" which contains several criteria, including an identification of the allegations and findings of facts supporting the determination [of responsibility or non-

responsibility]. 34 C.F.R. 106.45(b)(7).

The 2020 Title IX Rule codified a universally applicable formal grievance process that in practical application is indistinguishable from litigation. The tort of abuse of process requires a plaintiff to demonstrate that the defendant abused a "legal process." *Rosen v. American Bank of Rolla*, *supra*.  Both the title ("Grievance **Process** for Formal Complaints of Harassment") and contents of 34 C.F.R. 106.45, leave little doubt that the 2020 Title IX Rule created a "legal process."

The R&R found that "these regulations provide the parties to a Title IX proceeding with a full range of procedural rights including notice, an opportunity to be heard and present witnesses and evidence, the assistance of retained counsel, and a right to appeal adverse decisions. 34 C.F.R. § 106.45. Therefore, these disciplinary hearings establish the legal rights, duties, or privileges of a party after a process that embodies the attributes of judicial proceedings."  (Doc. 43, at 30).

Jauregui's objection is that the regulations do not provide subpoena power.  (Doc. 45-1, at 3).  This objection does not somehow make the very detailed regulations and required processes and procedures somehow not what they are – a formal process, mandated by law.  Indeed, the Federal

Rules of Civil Procedure, and the rules of civil procedure of the fifty states, all are different, with some providing additional procedures than others. But while one might argue for the utility of additional procedures, there can be no argument that the states' rules of procedure, the federal courts' rules of procedure, and the Title IX regulations' rules of procedure, all create detailed processes. Jauregui's objection is minute and not well founded.

Defendants abused the Title IX process embodied in 34 C.F.R. § 106.45 by using it not to seek relief for any violation of rights by Devin McCarthy or by Ms. Olasimbo. Instead, defendants filed a baseless counterclaim against Ms. McCarthy alleging that she sexually abused Boye, and a baseless claim against Ms. Olasimbo alleging that she intimidated witnesses. The purpose of these claims was to pressure Ms. McCarthy to withdraw her claim that Boye raped her.

While Boye and Jauregui may still claim that, factually, they did not do what the Amended Complaint alleges, that Amended Complaint states a valid claim of abuse of process.

**Additional Evidence that the Title IX Proceedings Were a Legal Process: The Title IX Proceedings Were Quasi-Judicial in Nature**

In *Overall v. University of Pennsylvania,* 412 F.3d 492 (3d Cir. 2005), a defamation case, the Third Circuit ruled a university's private grievance

proceeding was not quasi-judicial, explaining that "Pennsylvania cases finding quasi-judicial privilege consistently involve proceedings before federal, state, or local governmental bodies, *or proceedings held pursuant to a statute or administrative regulation.*" *Overall*, 412 F.3d at 497 (emphasis added). In *Overall,* the grievance proceeding was not pursuant to Title IX but instead the University's general "Faculty Grievance Procedure." *Id.* at 495. As explained above, the Title IX proceedings in this case were held pursuant to 34 C.F.R. § 106.45, an administrative regulation. Pursuant to the Third Circuit's reasoning, they were quasi-judicial in nature.

In *Khan v. Yale University*, 511 F.Supp.3d 213, 220 (D. Conn. 2021), a federal district court held that postsecondary Title IX proceedings are quasi-judicial. Khan brought a defamation claim against his accuser based on her testimony in Yale's Title IX proceedings following her written complaint accusing Khan of sexual assault. The court rejected Khan's assertion "that proceedings conducted by purely private institutions and entities can never be quasi-judicial proceedings because they lack the necessary component of being conducted by a public actor." *Khan*, 511 F.Supp.3d at 220. "[T]he public/private distinction may not be as significant as Mr. Khan suggests," noting that "the proceeding at issue here was one

authorized by federal law, *i.e.*, Title IX and its regulations and interpretative guidance…."[8] *Id.* at 225.

At page 3 of Jauregui's brief (Doc. 45-1), he argues that *Khan* and *Overall* are are distinguishable because "Neither case stood for the proposition that a Title IX proceeding amounts to legal process." But that is not the point. The point is that those cases found proceedings held pursuant to a statute or administrative regulation are quasi-judicial. That rationale applies fully to proceedings pursuant to the 2020 Title IX Rule. See also *Ralston v. Garabedian*, No. 19-1539, 2021 WL 6072881, *11 (E.D.Pa. Dec. 23, 2021) ("a Title IX investigation is quasi-judicial by involving an administrative body with discretionary decision-making authority").

\*                   \*                   \*

The 2020 Title IX Rule created a detailed federal legal process, which Jauregui and Boye abused. Additionally, under Third Circuit and other caselaw, "*proceedings held pursuant to a statute or administrative regulation*" constitute quasi-judicial processes.

---

[8] *Khan* reached this conclusion even without considering the 2020 Title IX Rule's explicit creation of a legal process—the Title IX proceedings in *Khan* were held pursuant to the 2011 Letter.

Federal caselaw, Pennsylvania caselaw concerning expansive interpretation of the tort of abuse of process, and logic, dictate that the 2020 Title IX Rule created a legal process susceptible to abuse within the meaning of the tort of abuse of process.

## POINT THREE

### MS. MCCARTHY STATES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, OR IN THE ALTERNATIVE, CAN STATE SUCH A CLAIM

On page four of his brief, Jauregui makes a one paragraph objection to the R&R's conclusion that Devin McCarthy states a claim of intentional infliction of emotional distress.

The R&R discusses the relevant law and legal conclusions in detail (Doc. 43, at 21-25); we will not repeat them herein. We do discuss additional facts pled in the Amended Complaint.

Jauregui advised Boye to manufacture allegations against Ms. McCarthy to delay the hearing of Ms. McCarthy's complaint, to retaliate against Ms. McCarthy, and to intimidate Ms. McCarthy to drop her complaint. (AC, ¶¶67-68). Jauregui did so despite knowing that Boye previously admitted having sex with Ms. McCarthy when she was so intoxicated that she could not consent. (AC, ¶¶48-54).

Jauregui advised Boye to manufacture allegations against Ms.

Olasimbo to retaliate against Ms. McCarthy for filing her complaint, and to intimidate Ms. McCarthy into dropping her complaint. (AC, ¶77). Jauregui advised Boye to manufacture allegations of defamation against Mrs. McCarthy to retaliate against Ms. McCarthy, and to intimidate Ms. McCarthy into dropping her complaint. (AC, ¶¶85, 88-91).

Because a motion to dismiss is to be judged solely by the facts pled in a complaint, plaintiffs here rely only on their pleading. However, additional disturbing facts regarding Jauregui's conduct exist; if necessary, plaintiffs can amend their Complaint to reflect the full breadth of Jauregui's extreme and outrageous conduct.

For example, in a letter sent to Ms. McCarthy's counsel, Jauregui threatened that, at the hearing for Boye's counterclaim, "my client and his witnesses will state to the school that in their observations, this certain student engages in a wide range of sexual conduct….they will state that part of her conduct…included [her] having sex with another drunken student on my client's couch. The description of that sexual conduct will most likely include an extremely personal act, namely, anal sex, which is a violation of their school's policy. The list will likely go on."

In another letter to Ms. McCarthy's counsel, Jauregui attempted to suborn perjury from Ms. Olasimbo in the form of an affidavit incriminating

Ms. McCarthy, offering "withdrawal of [Boye's] complaint against [Ms. Olasimbo], the punishment for which goes from a minimum of probation to a maximum of dismissal…in exchange for an affidavit where [Ms. Olasimbo] states...that [Ms. McCarthy] asked her to interfere in the investigation." Jauregui made explicit his intent to blackmail Ms. Olasimbo at Ms. McCarthy's expense: "In short [Ms. Olasimbo] will face no disciplinary consequence if she agrees to cooperate with [Boye] in showing that [Ms. McCarthy] asked her [Ms. Olasimbo] to interfere in the investigation. This also requires [Ms. Olasimbo's] agreement to testify at the hearing…against [Ms. McCarthy]."

Boye's baseless and retaliatory counterclaim against Ms. McCarthy, filed at Jauregui's direction, functioned as a vehicle for Boye and Jauregui to introduce at a hearing evidence of Ms. McCarthy's alleged prior sexual history and sexual predisposition, for the purpose of humiliating her, shaming her, retraumatizing her, and retaliating against her for filing a Title IX Complaint.

As a consequence of Jauregui's extreme and outrageous conduct, Ms. McCarthy suffered severe emotional distress with physical manifestations including hair loss, eating disorder, and a suicide attempt.

While the Amended Complaint in its present form states sufficient

facts supporting a claim of intentional infliction of emotional distress, should it be necessary plaintiffs will promptly amend their complaint to include the above stated facts.

## CONCLUSION

This Court should affirm or adopt the Report and Recommendation.

DYLLER & SOLOMON, LLC

/s/ Barry H. Dyller, Esq.
88 North Franklin Street
Wilkes-Barre, PA 18701
(570) 829-4860

Attorneys for Plaintiffs

<u>CERTIFICATE PURSUANT TO LR 7.8(b)</u>

BARRY H. DYLLER, ESQ., hereby certifies pursuant to LR 7.8(b) that this brief contains 4,888 words.

/s/ Barry H. Dyller

<u>CERTIFICATE OF SERVICE</u>

BARRY H. DYLLER, ESQ., hereby certifies that on June 22, 2023, he served a copy of the foregoing brief on defendants by the Court's ECF system.

/s/ Barry H. Dyller